UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

FILED
CHARLOTTE, NC

DEC 19 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

| | |
|---|---|
| William Cameron, <br>     Plaintiff, <br><br> v. <br><br> EQUIFAX INFORMATION SERVICES LLC, <br>     Defendants. | ) JURY TRIAL DEMANDED <br> ) <br> ) <br> ) Case No. 3:25-CV-1010-KDB <br> ) <br> ) <br> ) <br> ) <br> ) |

COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

Plaintiff William Cameron brings this civil action against EQUIFAX INFORMATION SERVICES LLC through counsel, seeking actual damages, statutory damages, costs, and attorney's fees following violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

## II. JURISDICTION AND VENUE

This District obtains subject matter jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1681p, which provides for jurisdiction of actions arising under the FCRA.

1. Defendant EQUIFAX INFORMATION SERVICES LLC (hereinafter as "Equifax") is a consumer reporting agency subject to the requirements of the FCRA and is therefore subject to the jurisdiction of this Court.

2. Venue is proper as the Plaintiff lives in Union County, North Carolina and the conduct described in this action occurred in this District.

### III. IDENTIFICATION OF PARTIES

3. William Cameron (hereinafter as "Mr. Cameron") is a natural person participating in the credit industry. Mr. Cameron is a Consumer as defined by 15 U.S.C. § 1681a(c). Currently residing in Mecklenburg County, North Carolina.

4. According to the North Carolina Secretary of State records. Equifax is a Georgia based corporation. Equifax's primary business address is 1550 Peachtree Street NW, Atlanta, GA 30309.

5. Also found on the North Carolina Secretary of State records. Equifax's registered agent is Corporation Service Company. Their principal address is 2626 Glenwood Avenue, Suite 550, Raleigh, NC 27608.

6. Equifax operates as a nationwide Consumer Reporting Agency ("CRA") under the definition set out in 15 U.S.C. § 1681a(f). For a fee or through cooperative arrangements, it regularly collects and analyzes credit and consumer data, then sells or provides that information to third parties in the form of consumer reports. In

doing so, Equifax makes use of interstate commerce channels such as the mail and the internet. Because of this, Equifax is directly subject to the requirements of the FCRA and is fully aware of the legal duties placed on it by federal law.

## IV. FACTS AND ALLEGATIONS

7. On or about December 01, 2025, Plaintiff was in the market for obtaining new extensions of credit. So he requested a copy of his consumer disclosure from Equifax (confirmation # 5335610451) through the online, government issued portal that Equifax uses is known as annualcreditreport.com.

8. Equifax immediately furnished a consumer disclosure in response to the plaintiff's online request.

9. When Mr. Cameron reviewed the disclosure, he noticed there was a significant amount of incomplete and inaccurate information disclosed. In addition, the information was not clear or accurate. Rather displayed in a manner that seemed to give him the bare-minimum amount of information possible.

10. Mr. Cameron's plan was to obtain the information in his file to dispute any inaccurate accounts that may interfere with him obtaining new credit.

11. Since his recent disclosure was incomplete and inaccurate. It caused him to be unable to compare, contrast, verify or dispute the adverse accounts in his file that would cause him to get denied for extensions on credit.

12. The volume of omitted information on his disclosure made it impossible to make any significant progress in compiling and disputing inaccurate information from his file.

13. Some of the fields omitted by Equifax include *Account numbers, Date of last activity, Actual payment amount, Charge off amount and Original Creditors.* Equifax failed to disclose complete payment history for multiple accounts.

14. The omissions made by Equifax are in direct violation of 15 U.S.C. § 1681g(a)(1). As they possessed some of the same information in their file which they chose to omit on Plaintiff's June disclosure.

15. The accounts provided on the disclosure are inaccurate and incomplete. Some accounts were opened as early as 2021. Proving that Equifax has a large amount of data they are legally obligated to disclose.

16. This violation of 15 U.S.C. § 1681g(a)(1), committed by Equifax has caused a great amount of harm to the Plaintiff. Including but not limited to statutory rights deprivation, reputational tarnishment, financial hardships, risk of disproportionate adverse results when applying for extensions of credit, a deterrence of involvement in the credit industry which was intended to be fair, worry of his credit rating being

subject to irrevocable damage and irreparable inaccuracies, anxiety pertaining to his financial and personal future, fear in operating in an economy that is so reliant on a consumer's credit history, amongst many other negative emotions.

## V. LEGAL FRAMEWORK AND OBLIGATION

17. Consumers receiving full and complete file information plays a vital role in their ability to identify, investigate and dispute inaccuracies in their file. Pursuant to 15 U.S.C. § 1681g(a)(1), every consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer all information in the consumer's file.

18. Clearly is defined as *plainly understandable, free from ambiguity*. Accurately is defined as *correct and exact*. Equifax's disclosure did not disclose all of the information in Mr. Cameron's file.

19. The *Federal Trade Commission* and The *Consumer Financial Protection Bureau* explained in their advisories, that incomplete disclosures block consumers from reviewing their files, spotting mistakes, and disputing errors as allowed under §§ 611 and 623. They additionally highlighted that these omissions cause real damage to consumers. They explained when a consumer cannot see the source of incomplete information, they cannot fix it. Resulting in damaged credit profiles, higher borrowing costs, and fewer financial opportunities. This is exactly what happened to Mr. Cameron.

20. Despite repeated warnings from courts, the FTC, and the CFPB, Equifax has not changed course. They continue to give incomplete disclosures to consumers while delivering full, detailed reports to paying corporate clients. This ongoing disregard shows their violations are not mistakes, but willful choices.

21. The tradelines Mr. Cameron noticed that they were inaccurate and incomplete were Avant/Webbank, two Credit One Bank, CB Indigo, Capital One Bank, TBOM MIL, Skyla Federal Credit Union, Missouri Higher Education Loan, Apple Card/GS Bank USA, and State Employees Credit Union.

22. The AVANT/WEBBANK tradeline furnished to Mr. Cameron contained numerous deficiencies. Including but not limited to, the account number presented (*4723) being incomplete. The "Date of Last Activity", "Term Duration", and eight other disclosures are all incomplete and inaccurate, showing no data. Additionally the "24 Month History" section has missing information such as "Actual Payments" and "Past Due Amount" according to Equifax's records.

23. The two CREDIT ONE BANK tradelines furnished to Mr. Cameron contained numerous deficiencies. Including but not limited to, the account numbers presented (*7136), (*8499) both being incomplete. The "Date of Last Activity", and "Term Duration" are incomplete and inaccurate, as well as six disclosures in this section are missing information. Additionally, the "24 Month History" showed incomplete or no data, leaving out "Actual Payment Amount" and "Past Due Amount" not showing vital data, according to Equifax's records.

24. The CAPITAL ONE BANK tradeline furnished to Mr. Cameron contained numerous deficiencies. Including but not limited to, the account number presented (*1969) being incomplete. The "Date of Last Activity", "Charge Off Amount" are also incomplete and inaccurate, as well as six other sections that are missing information. Additionally, the "24 Month History" showed incomplete or no data, leaving out "Actual Payment Amount" and "Past Due Amount" information.

25. The CB INDIGO tradeline furnished to Mr. Cameron contained numerous deficiencies. Including but not limited to, the account number presented (*6345) being incomplete. The "Date of Last Activity", "Actual Payment Amount", and seven other disclosures are all incomplete and inaccurate, showing no data. In the "Payment History" section there are months of missing information. Additionally the "24 Month History" section has missing information such as "Actual Payments" and "Past Due Amount" according to Equifax's records.

26. The TBOM MIL tradeline furnished to Mr. Cameron contained numerous deficiencies. Including but not limited to, the account number presented (*2373) being incomplete. The "Date of Last Activity" also was incomplete and inaccurate, as well as eight other sections that are missing information. Additionally, the "24 Month History" showed incomplete or no data at all, leaving out "Actual Payment Amount" and "Past Payment Amount" information. There is no way for Mr. Cameron to be able to make an accurate assessment of his financial situation when his information is missing or inaccurate.

27. The SKYLA FEDERAL CREDIT UNION tradeline furnished to Mr. Cameron contained numerous deficiencies. Including but not limited to, the account number presented (*0001) being incomplete. The "Date of Last Activity" also was incomplete and inaccurate, as well as 7 other sections that are missing information. The "Payment History" section has months of missing disclosures. The "24 Month History" section, the sub sections, "Scheduled Payment Amount", "Actual Payment Amount", and "Credit Limit" have no information at all. This SKYLA account was opened 11/2020, both the "Payment History" and "24 Month History" sections have months to years of missing disclosure.

28. The MISSOURI HIGHER EDUCATION LOAN tradeline furnished to Mr. Cameron contained numerous deficiencies. Including but not limited to, the account number presented (*0611) being incomplete. The "Scheduled Payment Amount", "Term Duration", and nine other disclosures are all incomplete and inaccurate, showing no data. Additionally the "24 Month History" section has missing information such as "Actual Payments", "Past Due Amount" and two other sections according to Equifax's records. This education account was opened 11/2020, both the "Payment History" and "24 Month History" sections have months to years of missing disclosure.

29. The APPLE CARD/GS BANK US tradeline furnished to Mr. Cameron contained numerous deficiencies. Including but not limited to, the account number presented (*7517) being incomplete. The "Date of Last Activity", "Term Duration", and

seven other disclosures are all incomplete and inaccurate, showing no data. Additionally the "Payment History" section has months of omitted missing information such according to Equifax's records. This APPLE account was opened 12/2019, the "Payment History" has months of missing disclosure.

30. The STATE EMPLOYEES CREDIT UNION tradeline furnished to Mr. Cameron contained numerous deficiencies. Including but not limited to, the account number presented (*8151) being incomplete. The "Date of Last Activity" and 10+ other disclosures are all incomplete and inaccurate, showing no data. With such missing data it makes it impossible to get a true financial picture.

## VI. DAMAGES SUSTAINED FROM EQUIFAX'S OMISSIONS

31. *The consumer also has the right to dispute the completeness and accuracy of the consumer reporting agency's information through a dispute resolution procedure. 15 U.S.C. § 1681i. Gillespie v. Equifax Info. Servs., L.L.C., 484 F.3d 938, 941 (7th Cir. 2007).* Because of Equifax's omissions, Mr. Cameron couldn't exercise this right. He was unable to verify accounts, check balances, review payment history, or dispute information he knew was wrong—leaving him powerless to protect himself.

30. Losing the right to a full disclosure, combined with being stripped of the ability to dispute errors, caused significant harm. The effects have been emotional, physical, financial, and reputational.

31. To establish standing, *The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision Spokeo, Inc. v. Robins, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016).in cases where "harms may be difficult to prove or measure[,]" "the violation of a procedural right granted by statute can be sufficient ... [and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." Id. at 1549 (citing Fed. Election Comm'n v. Akins, 524 U.S. 11, 20—25 (1998); Public Citizen v. Dep't of Justice, 491 U.S. 440, 449 (1989)) (emphasis in original).*

32. Courts have recognized that the violation of a statutory right itself often creates standing. *"The violation of a statutory right is usually a sufficient injury in fact to confer standing." Robins v. Spokeo, Inc., 742 F.3d 409, 412 (9th Cir.2014). Tourgeman v. Collins Fin. Servs., Inc., 755 F.3d 1109, 1115 (9th Cir. 2014).* Plaintiff has experienced damages that far exceed such qualifications.

33. The toll on Mr. Cameron has been severe. He has endured constant anxiety and damage to his reputation from being unable to confirm or correct errors in his file. Courts have repeatedly recognized that withholding complete information causes concrete harm. *Plaintiff suffers an 'injury in fact' when [he] fails to obtain information which must be*

*publicly disclosed pursuant to a statute,"* id. at 24–25, 118 S.Ct. 1777 *Kelly v. RealPage Inc., 47 F.4th 202, 212 (3d Cir. 2022).*

34. His creditworthiness has been directly harmed. Missing data made it impossible for him to identify and dispute inaccurate items, which led to financial hardship, credit denials, and unfavorable loan terms.

35. Beyond the financial impact, the emotional fallout has been just as damaging. He has lived with heightened stress, loss of confidence, embarrassment, and the frustration when trying to apply for a new vehicle loan, all directly tied to Equifax's conduct.

36. Taken together, Equifax's violation of statutory rights and the harms that followed are more than enough to establish Article III standing. *In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified Spokeo, Inc. v. Robins, 578 U.S. 330, 342, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016).*

37. By knowingly ignoring its legal duties, despite warnings from regulators and prior cases, Equifax has acted willfully. Under 15 U.S.C. §§ 1681n and 1681o, Plaintiff is entitled to recover actual damages, statutory damages, attorney's fees, and punitive damages.

## VII. FIRST CLAIM FOR RELIEF - VIOLATION OF 15 U.S.C. § 1681g(a)(1)

## Failing to clearly and accurately disclose all credit information

38. Mr. Cameron adopts and incorporates all prior paragraphs as though fully set forth here.

39. Equifax violated 15 U.S.C. § 1681g(a)(1) when responding to Mr. Cameron's disclosure request by failing to provide a complete and accurate report of the information in his file. Instead of supplying the full records required by Congress, Equifax delivered disclosures that left out important and necessary information.

40. Under 15 U.S.C. § 1681n, Equifax is liable to Mr. Cameron for either his actual damages or statutory damages of up to $1,000 per violation, along with costs and reasonable attorney's fees.

41. The disclosure Equifax produced contained significant gaps, including missing balance histories, incomplete payment records, partial account numbers, and other absent account details. Each missing piece represents a separate violation of the FCRA.

42. Even if Equifax's actions are not considered willful, they were at the very least negligent. As such, Equifax remains liable under 15 U.S.C. § 1681o for Plaintiff's actual damages and the costs of bringing this action.

WHEREFORE, Mr. Cameron respectfully requests that the Honorable Court enter judgment against Equifax for:

a. The greater of statutory damages of $1,000 per incident and Mr. Cameron' actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or Mr. Cameron' actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Costs pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and reasonable attorneys fees pursuant to 15 U.S.C. § 1681n(c), and;

d. Such other relief that this Court deems just and proper.

Respectfully submitted on December 16, 2025, by:

William Cameron
1025 W 6th St Unit 307
Charlotte, NC 28202
E: williamcameron1979@gmail.com